Ranney, J.
This action was brought to recover damages for-removing certain fixtures attached to a toll-gate belonging to the-plaintiff.
The defendant, McCullock, as supervisor of the road district, and the other defendants as his servants, and under his direction, justify this removal, as an obstruction to the highway. Under a charge of the court, adverse to the sufficiency of this justification,' a verdict for nominal damages was found for the plaintiff; and the-defendants now move for a new trial upon two grounds:
*369 1. That the supervisor was a mere ministerial officer, acting by, and in pursuance of, the authority given him by a body (the township trustees) having jurisdiction of the subject matter, and, therefore, that he and those acting under him are not liable in trespass.
2. That the plaintiff had no right to appropriate and use a public highway for the purposes of its plank-road, without first having made compensation for the damages to the parties injured, by reason of such appropriation; and that having no right in the public highway, its fence was an obstruction which the supervisor might lawfully remove.
The evidence upon which the cause was submitted to the jury, is contained in an agreed statement, signed by the counsel, and will b e found in the statement of the case preceding this opinion.'
Assuming the company to have been legally organized, and in lawful possession of the locus in quo, under its charter, there is very little difficulty in disposing of the first cause assigned in the motion. The supervisor, it is true, is a ministerial officer. He receives a rough draft of tho boundaries of his district, and a list of the road taxes to be paid within *it, and is bound to superintend the work upon the roads, and to keep them open, unobstructed, and in repair. So far as he executes these duties under the direction of others, having jurisdiction over the subject-matter, with no power to inquire into the regularity of their proceedings, or to control their action, he would seem to be within the reason of the rule laid down in Loomis v. Spencer, 1 Ohio St. 153; and would undoubtedly be protected by it. But his power only extends to the “public roads ” laid out and established in his district, and he has no more authority over the plank-roads and turnpikes-constructed by and placed by the legislature under the control of companies incorporated for the purpose, than he has over the farms and dwellings of those who may reside within his jurisdiction. He is bound to know what roads belong to the public, and what to such companies; and we see no hardship in requiring him, like every other citizen, to take notice of the laws of the land, and of the actual occupancy of those to whom such turnpikes or plank-roads may belong.
Nor is there much more difficulty in deciding the other cause assigned, without reaching the question mainly discussed by counsel. The company was certainly duly incorporated; and it is agreed it had constructed its plank-road, in all respects, according to the? *370 provisions of its charter, unless taking jjossession and laying its plank upon what was then a state road, without assessing or paying any damages to the owners of the fee of the land over which the state road had been laid many years before, was unauthorized by it. It is further agreed, that after the completion of the road, a committee was duly appointed, as provided by law, who reported the road built according to the provisions of the charter; and that thereupon the company erected its toll-gates, etc., and that the road was in good repair at the time the injury complained of was done. It is not seriously denied, and certainly can not be, that the company was authorized by its charter to take possession of, and appropriate public roads, when necessary, for the purpose of constructing the one it was authorized to build.
*Under such circumstances, it seems to us very clear that the state road at the place in question was withdrawn from the jurisdiction of the supervisor, whatever liabilities the company might have incurred to individuals for a failure to appropriate it in a legal manner. He is but a public officer, charged with the performance of public duties, upon the roads belonging to the public; and when the public, whose officer he is, authorizes such roads to be taken, and by its constituted authorities approves the appropriation, by allowing the company to take possession and erect its gates, it effectually relieves him from all responsibility in respect to them, and divests him of all power over them. It is no part of his business to vindicate the rights, or redress the wrongs, of private individuals ; nor can he, in this collateral manner, legitimately •draw such rights into controversy, or insist upon them to justify -an unwarrantable interference with the property of the company.
' This view of the subject disposes of the case, and renders it ■strictly unnecessary to go further; but as counsel have supposed the legality of the appropriation to be involved, and have fully discussed that question, we have concluded to express our opinions aipon that aspect of the defense, as though the controversy had •arisen between the owner of the fee over which the road passed, ;and the company.
Section 7 of the act incorporating the Milan and Richland •Plank-road Company, which is made to govern this company, provides :
“ It shall, and may be lawful for said directors to enter upon, and take possession of, any lands, roads, streets, alleys, stone, timber, and *371 earth necessary for the laying out and construction of said plank-road, and all necessary appurtenances and appendages, doing no unnecessary damage, having first tendered or secured to the party injured the value thereof, or the damages sustained by said appropriation ; and in case any land or materials, etc., are wanted to be .appropriated for the purposes aforesaid, shall not be given,” etc. The mode in which the appropriation may be enforced is specifically ^pointed, out. It is quite evident the legislature intended by this section, as the constitution required, to provide for making full satfaction to the owners of private property before it could be taken by the corporation; nor am I disposed to doubt, that it would be incumbent upon the company to satisfy any damages that an individual might sustain to his property, by reason of the change írom a state to a plank-road, before such change could be lawfully made, although no property was actually taken. But while private rights were thus amply secured, it is clear that no compensation for the public interest was expected or required. That interest, like all others of like character, was subject to legislative control, •■and might be disposed of at the discretion of the general assembly, without any constitutional restraint, whatever may be thought of •the justice or propriety of its action. The true inquiry, therefore, is: Has this company taken and appropriated to its uses anything more than the public interest in the state road? If it has, or has in any manner taken or injured the property of individuals, without making compensation, it is in the wrong, and liable to them for nil the consequences. What, then, were the respective interests of the public and the owners of the soil over which this road passed?
The public had acquired, and, we are bound to suppose, had paid for, to the satisfaction of the owners, a perpetual easement in the land covered by the road, which gave the right to all persons to pass and repass over it at pleasure, either on foot or by any mode •of conveyance they might see fit to employ; and also the right to improve it, for that purpose, in any manner that might be thought, by the legislature, most conducive to the end in view, and would best subserve the interests and convenience of the public at largo.
The owners retained the fee of the land subject to the easement, and the right to use it in any manner not inconsistent with the full and perfect enjoyment, by the public, of the interest acquired by it, so long as it continued to be used for that purpose.
*As the interest of the public was acquired for defined ob *372 jects and specified purposes, it seems very clear that the land could not be diverted to other purposes, or used in a manner substantially different from that for which it was appropriated, without relieving it from the incumbrance, and restoring the owner to the absolute-dominion he had before it was taken.
But it is equally clear that there has been no substantial change of the uses to which the land was subjected, or of the rights and interests of the owners, by the transfer of the public interests to the uses of this company. It was a public highway before, and is a, public highway still. 1 Ohio St. 95; 16 Pick. 175; 12 Met. 458. It, was subject to certain'uses before, and is subject to precisely the-same now. Before, the public had the right to construct the road: or improve it in any manner deemed expedient or necessary; and the company now have the right, and are bound to construct it in. the manner provided in its charter, and to keep it in repair.
The interest of the public extended no further than was necessary to accomplish these objects; and in the accomplishment of the same-objects, the company now require no greater interest, and are limited by the same necessity as the public, before the transfer was-made. Before, the owner still retained the fee in the land, with the right to occupy it in any manner not inconsistent with the public-use; and his interest and right of occupancy is no less now.
, Before, it is true, the road was placed under the control of public-officers, and supported by a tax laid upon the persons and property of the vicinity; now, it is placed under the control of a company incorporated for the purpose, and supported by a toll exacted from those who use the road. But this is only using other instrumentalities, and raising the necessary funds by other means, to accomplish the same lawful purpose; and in no respect changes the public-character of the improvement, or the relation of property-owners, to it.
*That the legislature then possessed unlimited discretion in the choice of means and agencies for the accomplishment of such objects, has been judicially determined in the case of Cincinnati, etc., R. R. Co. v. Clinton Co., 1 Ohio St. 95.
If, instead of adopting this means and agency, it had seen proper to raise a tax to plank the road, through the agency of the supervisor, and had erected gates upon it, and exacted tolls to reimburse the expenditure, no one could have doubted the power to do so, *373 however much the policy of such a course might have been questioned.
But it is very positively asserted that the property-owners have been injured; and as the record discloses no particular damages to have resulted from planking the road, and as no property has been taken from them, and they, evidently, retain the samé interest as before, it is said we are bound to presume such injury, from the fact that what was before a free road, is now a toll-road. How this injury would have been less, if the state or county had constructed the road, and exacted tolls upon those who use it, to pay for it, than by attaining the same end, by the same means, through the agency ■of a corporation, is not easily perceived. But how are wé to pre-sume that any one has been injured? We are bound to suppose, the general assembly, in full view of the facts, and with absolute power over the subject, intended a benefit instead of an injury, when they created the corporation, and authorized it to construct the road, paying itself for the expenditure by reasonable tolls upon those who might find it for their interest or convenience to use it. If the general assembly was not mistaken, those residing upon it w-ould be likely to reap a full share of its benefits; but if they were mistaken, and it is really an injury, such persons only share it in common with the balancé of the community, and not, surely, in a larger degree, since they are relieved from the burden of keeping it up, than those who are compelled to use it, and at the same time compelled to keep up the public roads of their own neighborhoods.
But all such considerations are too intangible to base judicial ^action upon.- Individuals may suffer from bad legislation; but it is damnum absque injuria, and no appeal can be taken from the law-making power to the courts, for relief. Such injury, in this case, is only a possible result—it is neither probable nor proved; but if it was not only probable, but proved, so long as no property was taken, or rights of property affected, I should still be of opinion, that no remedy could be had through the judiciary.
The views we have presented are fully sustained by the adjudged -cases cited in argument.
In the case of Murray v. Commissioners of Berkshire, 12 Met. 456, a turnpike road had, with the assent of the corporation, been ■changed to a common highway, without again appropriating the land over which it passed, to the latter use. It was claimed that the land, upon the discontinuance of the turnpike, reverted to the *374 owners, discharged of the easement, and could only be appropriated, for the purpose of a common highway, upon making full compensation. But the claim was disallowed, and an application for a writ of mandamus, to compel the assessment, dismissed; not, as counsel suppose, because the proper remedy was not pursued, but upon tho merits. Several formal objections were made; but Chief Justice Shaw, after alluding to them, says: “We have thought it best to pass these all over, without further notice; because the court are of the opinion, that upon the main question, which involves the merits of the case, the claim of the petitioners is not well founded.” He then proceeds to show, that “the proprietors had already been paid for a perpetual easement over their land, for all the uses and purposes of public travel; ” that the corporation, having thus paid the owners for it, “ transferred it to the public, under the sanction of law, and -thereby the public became their assignees; ” that it was hardly a change of the use, but “ rather a change of the mode, in-which an existing highway should be supported, repaired, and maintained ; ” that “ a turnpike is a highway, which all the public have a right to use, which no one has a right to obstruct, not even the-^corporation that built it, except so far as they are expressly authorized by law to do so, in order to secure the tolls granted them that “ the change of a turnpike to a common public highway, is rather a continuance of the same public easement, under a modification of form, not in general affecting the rights of proprietors of lands over which it passes;” and that, without such change, the lands would have stood charged “ with a perpetual easement for a public way, neither smaller nor less enduring than that with which they are now charged.” Such is an'outline of this opinion, given in the language of the court; and if it is admitted to be a correct exposition of the law, it must be deemed conclusive of the question we are considering.”
It is true, the statute of Massachusetts, as I have expressed the opinion this statute does, allows the owner indemnity for any damages arising to his property from the change; but the case is full to the purpose, that “ in general, such, a change will occasion no damage;” and if it is claimed to have resulted, it must be distinctly proved, and can not be presumed.
In the case of Benedict v. Goit, 3 Barb. S. C. 459, a common highway had been taken by a plank-road company, under authority of a legislative enactment, upon paying the commissioners of high *375 ways for the public interest. The plaintiff, an owner of land over which it passed, claimed the enactment to be unconstitutional, and that the road,11 since its appropriation by the company, had ceased to be a public highway, and, therefore, that the entire interest in it had reverted to him as the original owner.” The court affirmed the constitutionality of the law; and after stating the position of the defendant’s counsel to be, “ that the road in question in this suit is a public highway still, open for the public use, precisely as every public road in the state; and that the corporation organized by the act before cited, has succeeded to all the rights and powers of the commissioners of highways, in the several towns through which the road passes,” say, “we are of this opinion.”
*In this case, compensation for'the public interest was required to be made; but whether such interests shall be granted with or without compensation, is a matter within the sole discretion of the general assembly, and however exercised, lays no ground for legal complaint on the part of private individuals. In every view of this case, therefore, taken by the defendant’s counsel, we are of opinion the law was correctly given to the jury, and that the verdict is entirely consistent with both the law and the evidence.
The motion for a new trial must be denied.